MARK M. BETTILYON (*pro hac vice* application to be filed)
MICHAEL K. ERICKSON (No. 242934)
RAY QUINNEY & NEBEKER
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone: (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mbettilyonrqn.com
E-mail: merickson@rqn.com

JEFFREY E. FAUCETTE (No. 193066)
SKAGGS FAUCETTE LLP
One Embarcadero Center, Suite 500
San Francisco, California 94111
Telephone:  (415) 315-1669
Facsimile:   (415) 433-5994
E-mail:  jeff@skaggsfaucette.com

*Attorneys for Plaintiff Choose Energy, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHOOSE ENERGY, INCORPORATED, a Delaware Corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMERICAN PETROLEUM INSTITUTE, a District of Columbia corporation,<br><br>    Defendant. | Case No. 3:14-cv-04557<br><br>**CHOOSE ENERGY'S NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Magistrate Judge Paul S. Grewal<br><br>Hearing Date:  October 28, 2014, at 10:00 a.m. |

**NOTICE OF MOTION**

TO AMERICAN PETROLEUM INSTITUTE AND THEIR ATTORNEYS:

 PLEASE TAKE NOTICE that on October 28, 2014, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court located at Courtroom 5, 4th Floor, United States Courthouse, 280 South 1st Street, San Jose, California, Plaintiff Choose Energy, Inc. will and hereby does move this Court for a temporary restraining order to enjoin Defendant American Petroleum Institute, as well as any related entity or person acting in concert with it, from any use of the CHOOSEENERGY (no space) and CHOOSE ENERGY (space) trademarks or any confusingly similar marks, including without limitation any use of the <chooseenergy.org> domain name. Choose Energy makes this motion pursuant to Federal Rule of Civil Procedure 65.

 This motion is based on the attached Memorandum of Points and Authorities, the pleadings on file in this matter, such other relevant materials and evidence as may be presented to the Court, and any further grounds the Court deems just and proper.

 Dated:  October 24, 2014

RAY QUINNEY & NEBEKER P.C.

/s/ Michael K. Erickson
Mark M. Bettilyon
Michael K. Erickson


SKAGGS FAUCETTE LLP

Jeffrey E. Faucette


*Attorneys for Choose Energy, Inc.*

CHOOSE ENERGY'S NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE RE PRELIMINARY INJUNCTION

ii

CASE NO. 14-CV-4557-PSG

## TABLE OF CONTENTS

Page

NOTICE OF MOTION ..................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................vi

I.      INTRODUCTION.................................................................................................vi

II.     FACTUAL BACKGROUND ............................................................................viii

        A.      Choose Energy's Marks..........................................................................viii

        B.      API's Infringement .................................................................................... x

III.    ARGUMENT ........................................................................................................ 1

        A.      Choose Energy Is Likely To Succeed on the Merits.............................. 1

                1.      Choose Energy Owns the Choose Energy Marks ................................ 1

                2.      API's Use Is Likely to Confuse Consumers ............................... 3

                        (a)     Internet Trinity Factor 1:  The Parties' Marks Are
                                Identical................................................................................. 3

                        (b)     Internet Trinity Factor 2: The Parties' Services Are
                                Related.................................................................................... 4

                        (c)     Internet Trinity Factor 3: The Parties Both Market
                                Their Services Through the Internet................................... 4

                        (d)     Choose Energy's Marks Are Strong.................................... 5

                        (e)     Internet Consumers Do Not Exercise Care .............................. 6

                        (f)     API Knew or Should Have Known of Choose Energy's
                                Marks ..................................................................................... 6

                        (g)     Evidence of Actual Confusion is Substantial............................ 6

        B.      Choose Energy Will Suffer Irreparable Harm Without an Injunction ...........7

        C.      The Balance of Hardships Strongly Favors Choose Energy ..................... 8

        D.      The Public Interest Favors an Injunction........................................ 9

        E.      API's Use Is Not Protected by the First Amendment .................... 10

IV.     CONCLUSION.................................................................................................. 11

## **TABLE OF AUTHORITIES**

Page

Cases

*Accuride International, Inc. v. Accuride Corp.,* 871 F.2d 1531 (9th Cir. 1989)............................5

*AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979) ..............................3, 4, 6, 7

*Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521 (9th Cir. 1984) ..................................8

*Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240 (3d Cir. 1983),
    *cert. dismissed,* 464 U.S. 1033 (1984) ................................9

*Applied Info. Scis. Corp. v. eBay, Inc.,* 511 F.3d 966 (9th Cir. 2007) ............................1

*Brookfield Comm'cns, Inc. v. West Coast Ent'mt Corp.,* 174 F.3d 1036 (9th Cir.
    1999) ............................................................................................passim

*Caesars World, Inc. v. Milanian,* 247 F. Supp. 2d 1171 (D. Nev. 2003) ......................................9

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600 (1st Cir.
    1988) ................................9

*Dreamwerks Prod. Grp., Inc. v. SKG Studio,* 142 f.3D 1127 (9th Cir. 1998) ..............................4

*E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280 (9th Cir. 1992) ......................................5

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d
    1025 (9th Cir. 2010)..........................................................2

*GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199 (9th Cir. 2000).................................. 1, 5, 6, 9

*Interstellar Starship Servs., Ltd. v. Epix, Inc.,* 304 F.3d 936 (9th Cir. 1999) ..............................3

*Jews for Jesus v. Brodsky,* 993 F. Supp. 282 (D.N.J. 1998) ........................................11

*Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002)..................................................10

*Network Automation v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137 (9th Cir.
    2011) ..........................................................3

*Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385 (9th Cir. 1993) ................................................6

*Park N' Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189 (1985) ............................................1

*People for Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915
 (E.D. Va. 2000) ...........................................................................................................11

*Planned Parenthood Federation of America, Inc. v. Bucci*, 1997 WL 133313
 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998)...........................................11

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 59
 F.3d 902 (9th Cir. 1995)...............................................................................................5

*Senoguku Works v. RMC Int'l*, 96 F.3d 1217 (9th Cir. 1996)..........................................1

*United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128
 F.3d 86 (2d Cir. 1997).................................................................................................10

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S. Ct. 365 (2008)...............1

*Zombondo Entm't LLC v. Falls Media, LLC*, 602 F.3d 1108 (9th Cir. 2010) ................2

Statutes

15 USC § 1065 ...............................................................................................................1

Rules

Federal Rule of Civil Procedure 65................................................................................ii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.**    <u>**INTRODUCTION**</u>

3

Choose Energy operates an online marketplace at chooseenergy.com that helps

4

residential and business users comparison shop for their ideal energy supplier.  In addition to the

5

domain name <chooseenergy>, Choose Energy's trademarks are also featured prominently on

6

Choose Energy's website and emphasize the fact that its services are *energy unbiased*—enabling

7

consumers to make smart choices about their energy use from a diverse group of energy

8

suppliers.  For more than a decade, consumers have turned to Choose Energy as a trusted

9

resource that empowers them to make personal decisions about energy use, consumption,

10

resources, and policy.  And a significant number of these customers associate Choose Energy

11

with the "choice" to support clean and renewable energy sources that have a positive impact on

12

the environment, including natural gas plans with carbon offsets or electricity from renewables

13

such as wind and solar.

14

API is a national lobbying organization with a single agenda: promoting the commercial

15

expansion and development of the oil and natural gas industries.  Recently, and in connection

16

with the upcoming midterm elections, API launched its "Choose Energy" project—a

17

multimillion dollar television advertising campaign that drives traffic to the website at the

18

domain name <chooseenergy.org>. API is saturating television airwaves and Internet channels

19

with advertisements directing consumers to "Get Involved at ChooseEnergy.org."  Alarmingly,

20

API has misappropriated Choose Energy's trademarks for a promotional campaign that is *energy*

21

*biased*—extolling the purported benefits of the oil and natural gas industries and presenting only

22

one choice to consumers: continued dependence upon non-renewable fossil fuels regardless of

23

their adverse impact upon the environment.

24

API's infringement is causing *actual* confusion and deceiving consumers as to the

25

affiliation, connection, or association of API with Choose Energy and vice versa. Scores of

26

confused consumers have already contacted Choose Energy in the mistaken belief that it is

27

1    affiliated with API's one-sided fossil-fuel agenda.  API's unauthorized use is causing irreparable

2    injury to Choose Energy's goodwill and reputation as a trusted and unbiased resource for

3    choosing the ideal energy supplier, including clean and renewable energy providers.

4         API knew of or should have known that its "Choose Energy" campaign trampled upon

5    Choose Energy's rights. It is incomprehensible that API selected Choose Energy's marks as the

6    trade name of its "Choose Energy" project, as the domain name for its central website

7    <chooseenergy.org>, and as the brand for its publicity campaign, *without knowledge of Choose*

8    *Energy's identical, federally-registered trademarks already in prominent use at Choose*

9    *Energy's similarly named website <chooseenergy.com>.*

10        In any event, Choose Energy advised API of its trademark rights in a September 19, 2014

11   letter, in which Choose Energy offered to forego any claim for damages if API would agree to

12   immediately phase out its use of Choose Energy's marks. API's counsel responded on

13   September 23, 2014, explaining that API would need until October 12, 2014 to evaluate the

14   facts.  API's eventual letter asserted that API's infringing use was protected by the First

15   Amendment and refused to cease using Choose Energy's trademarks. API's assertion of the First

16   Amendment, however, is meritless. API is using Choose Energy marks *as trademarks* to identify

17   its trade name, informational website, and public-policy brand. Because this type of infringing

18   use is not protected by the First Amendment, Choose Energy filed suit.

19        With the mid-term elections now only ten days away, API's plan is readily transparent—

20   API will continue infringing Choose Energy's trademarks as part of API's multimillion

21   advertising campaign, and hope that the "clock runs out" on the election before Choose Energy

22   has sufficient time to obtain appropriate injunctive relief.  Choose Energy sought to resolve its

23   dispute with API amicably, but now is forced to seek relief in this Court.  API's advertising

24   campaign will likely "spike" in the week before the November election, causing an exponential

25   increase in the irreparable harm to Choose Energy's goodwill and reputation in its marks.

26   Accordingly, Choose Energy seeks immediate injunctive relief.

27

## II.     FACTUAL BACKGROUND

### A.     Choose Energy's Marks

For more than a decade, Choose Energy has provided information and resources to numerous customers to allow them to make informed decisions about energy use, consumption, resources, and policy.  As part of its services, Choose Energy operates an online marketplace at the website <chooseenergy.com> that helps residential and business users to comparison shop for their ideal energy supplier.  Choose Energy's online platform gives consumers a convenient and secure way to compare rates and plans in their area, and make the switch all in one place. Declaration of Kerry Cooper ("Cooper Decl.") ¶ 3.





Choose Energy provides a commercial service that is energy unbiased, enabling consumers to make smart choices about energy use: some choose the lowest-cost plans available; some choose long-term fixed-rate plans; and some choose clean energy sources, including natural gas plans with carbon offsets or electricity from renewables such as wind and solar. Choose Energy believes in the power of choice for consumers—whether it is a fixed rate plan

CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

viii

that gives peace-of-mind to customers or a renewable plan—the choice promoted is consumer-driven, not industry-driven.  Cooper Decl. ¶ 4.  Indeed, many of its customers see Choose Energy as a trusted resource that empowers them to make personal decisions about energy use, consumption, resources, and policy.  And a significant number of these customers associate Choose Energy with the "choice" to support clean and renewable energy sources that have a positive impact on the environment.  *Id.* ¶ 5.

Choose Energy uses both the CHOOSEENERGY (no space) and CHOOSE ENERGY (space) trademarks (collectively the "Choose Energy Marks") in connection with its online marketplace services. *Id.* ¶ 6.  Choose Energy has used the CHOOSEENERGY trademark in in its online domain name <chooseenergy.com> since at least 2004.  *Id.* ¶ 7.  From May 2007 (the first tagged traffic on chooseenergy.com) to the present, over 5.4 million visitors have browsed the Choose Energy website. *Id.*  In 2014, Choose Energy's website traffic is averaging over 200,000 visitors monthly. *Id.* The success of Choose Energy's website traffic is due in large part to Choose Energy's significant investment in the Choose Energy Marks.

As evidence of this investment, over the past five years, Choose Energy has expended more than $5 million to advertise and promote its online marketplace in connection with the Choose Energy Marks. *Id.* ¶ 8.  Choose Energy's advertisements prominently feature the Choose Energy Marks, and Choose Energy's advertising associates the Choose Energy Marks with Choose Energy's distinctive service enabling residential and business users to compare energy suppliers.  *Id.*  Because of the positive goodwill that they symbolize, the Choose Energy Marks are highly valuable assets of the company, and Choose Energy has made significant efforts to protect them through applications for federal trademark registration. *Id.* ¶ 9.

Choose Energy owns the following federal trademark registration for the mark CHOOSEENERGY (no space):  U.S. Registration No. 2,547,914, issued March 12, 2002, first used (at least by) July 31, 2000, in International Class 35 for "on-line directory services, namely, providing a website featuring web links to energy resource providers of electricity, natural gas,

CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

ix

propane, steam, fuel oils and alternative fuels," and in International Class 39 for "computer services, namely, providing a website featuring information in the field of energy resources, namely, enabling energy suppliers and buyers to exchange information necessary for executing transactions in electricity, natural gas, propane, steam, fuel oils and alternative fuels." *Id.* ¶ 10, Ex. 1.  In September 2014, Choose Energy filed a declaration of incontestability for its registration of the CHOOSEENERGY mark pursuant to Section 15 of the Trademark Act, 15 U.S.C. § 1065, and on September 12, 2014, the USPTO acknowledged that Choose Energy's declaration meets the statutory requirements.  *Id.* ¶ 11, Ex. 2.

Choose Energy also owns the following application for federal trademark registration for the mark CHOOSE ENERGY (space): U.S. App. No. 86394611, filed September 15, 2014, first used (at least by) May 1, 2008, in International Class 41 for "educational services, namely, providing consumers educational information and resources in the fields of energy use, consumption, resources, and policy," and in International Class 42 for "computer services, namely, providing a website featuring educational information and resources in the fields of energy use, consumption, resources, and policy." *Id.* ¶ 12, Ex. 3.

**B.      API's Infringement**

API is a national lobbying organization that promotes the commercial expansion and development of the oil and natural gas industries. Earlier this year, API launched its "Choose Energy" campaign—a multimillion dollar television advertising campaign to drive traffic to the website at <chooseenergy.org> (the "API Website"). *See* Declaration of Michael K. Erickson ("Erickson Decl.") ¶ 3, Ex. 1. API has been airing at least four separate television spots during hundreds of programs that urge consumers to "Get Involved at ChooseEnergy.org" as part of the November election. *See id.* ¶ 5.  API's video advertisements and the API Website use the Choose Energy Marks prominently to brand API's "Choose Energy" campaign with logos (*see id.* ¶ 4) such as the following:

1
2
3
4
5
6
7
8

 

9    According to the API Website, "Choose Energy is an affiliated project of API and

10  Energy Tomorrow," which makes clear that API is using "Choose Energy" as its trade name for

11  this particular campaign.  Indeed, the copyright notice attributes ownership to "Choose Energy,"

12  and API also uses the hashtag #ChooseEnergy on Twitter.  The API Website also includes the

13  "Choose Energy Election Center" and the "Choose Energy Candidate Questionaire."  *See id.* ¶¶

14  6-7, Exs. 2-3.  API is using the Choose Energy Marks in the same way that Choose Energy

15  does—as a trade name for its services, as an online domain name for its central website, and as a

16  prominent brand to easily identify its services in the minds of the consuming public.

17    Unlike Choose Energy, however, API uses the Choose Energy Marks to promote an

18  agenda that is energy biased, extolling the purported benefits of the oil and natural gas industries,

19  which allegedly promote a stronger economy, job growth, and national security. The API Project

20  presents a single choice to American consumers for their energy use, consumption, resources,

21  and policy: continued dependence upon non-renewable fossil fuels regardless of their adverse

22  impact upon the environment.

23
24
25
26
27

API's use of the Choose Energy Marks is already causing substantial and significant customer confusion.  Numerous confused consumers have contacted Choose Energy in the mistaken belief that it is or is related to API and consumer confusion is manifest across the numerous platforms that Choose Energy engages the public, including its call center, online customer chat interface, and its Twitter account.  Cooper Decl. ¶ 13.  Choose Energy estimates that it has already received approximately one hundred instances of customers who have been confused by API's advertising and mistakenly believed that Choose Energy was affiliated or associated with API's "Choose Energy" campaign.  *See id.* ¶ 14.  The following chat exchange between a customer service representative and a consumer in Hampton, Virginia demonstrates the confusion and the injury to Choose Energy's goodwill and reputation. *See id.* ¶ 14, Ex. 4.

---------- Forwarded message ----------
From: **USA #4436** <no-reply@olark.com>
Date: Sat, Sep 6, 2014 at 8:40 AM
Subject: Chat transcript: Customer Service and USA (Hampton, VA) #4436
To:          @chooseenergy.com

**Highlights**

- **Visitor Name:** USA (Hampton, VA) #4436
- **Chat started on:** https://www.chooseenergy.com/about/contact/
- **Chat started at:** 2014-09-06 08:33 PDT
- **IP Address:** 98.166.185.57

**Content**

| | | |
|---|---|---|
| **USA (Hampton, VA) #4436:** | i have two questions | 08:33 |
| **USA (Hampton, VA) #4436:** | maybe more | 08:33 |
| **Customer Service:** | Thank you for visitng ChooseEnergy.com. | 08:33 |
| **Customer Service:** | How may I help you today? | 08:33 |
| **USA (Hampton, VA) #4436:** | Is Choose Energy a politically partisan organization seeking to advocate candidates for public office like the Koch Brothers? | 08:34 |
| **Customer Service:** | Not that I know of. | 08:34 |
| **USA (Hampton, VA) #4436:** | in your tv ad I just saw on CNN...political parties are mentioned...Republicans are mentioned first...I feel you are partisan to the GOP...correct | 08:35 |
| **USA (Hampton, VA) #4436:** | ? | 08:35 |
| **Customer Service:** | We are unable to discuss politics. | 08:36 |
| **USA (Hampton, VA) #4436:** | AH so you ARE Republican focused!  You just exercised a smokescreen and deception tool | 08:37 |
| **USA (Hampton, VA) #4436:** | No time your Fascist organization | 08:37 |
| **USA (Hampton, VA) #4436:** | GOOD BYE | 08:37 |
| **Customer Service:** | Thank you for visiting ChooseEnergy.com. Have a great weekend! | 08:38 |

To stop receiving your transcripts via email, change your settings at: http://www.olark.com/transcripts

1    In light of API's one-sided fossil fuel agenda, the consumer confusion caused by API's

2    "Choose Energy" campaign is extremely detrimental to Choose Energy's goodwill in its marks.

3    The resulting confusion damages Choose Energy's reputation among many consumers as a

4    trusted resource for transparency and support of clean and renewable energy sources, as shown

5    in the following Twitter exchange with a Choose Energy representative. *See id.* ¶ 14, Ex. 4.



16    API's confusing use of the Choose Energy Marks is having far reaching effects.  Dana

17    Perino, former White House Press Secretary, is a Fox News Contributor with over a half a

18    million followers.  Her negative criticism of the API Project was relayed to Choose Energy via

19    an angry consumer who mistakenly believed Choose Energy was associated with API. *See id.*



CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

xiii

III.    **ARGUMENT**

Choose Energy is entitled to a temporary restraining order if it establishes that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S. Ct. 365, 374 (2008); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000).

A.    **Choose Energy Is Likely To Succeed on the Merits**

To prove trademark infringement, Choose Energy must show ownership of a legally protectable mark and a likelihood of confusion arising from API's use.  *Applied Info. Scis. Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir. 2007).

1.    **Choose Energy Owns the Choose Energy Marks**

Federal registration of a mark "constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark in commerce."  *Brookfield Comm'cns, Inc. v. West Coast Ent'mt Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); *Senoguku Works v. RMC Int'l*, 96 F.3d 1217, 1219 (9th Cir. 1996).  Thus, Choose Energy has the exclusive right to use the CHOOSEENERGY mark in commerce in connection with the goods or services specified in its registration, and Choose Energy has a nationwide right of priority to use the mark on such goods or services as of the filing date, July 14, 1999.  Furthermore, the mark is now incontestable under 15 U.S.C. § 1065, and its distinctiveness, therefore, cannot be challenged. *Park N' Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189 (1985) ("We conclude that the holder of a registered mark may rely on incontestability to enjoin infringement and that such an action may not be defended on the grounds that the mark is merely descriptive.")

With respect to its mark CHOOSE ENERGY (space), Choose Energy must show (1) its prior use of the mark and (2) the mark's distinctiveness.  First, Choose Energy's use of the CHOOSE ENERGY mark at least as early as May 1, 2008 significantly precedes API's recent

CHOOSE ENERGY'S NOTICE OF MOTION AND MOTION
FOR TEMPORARY RESTRAINING ORDER AND ORDER
TO SHOW CAUSE RE PRELIMINARY INJUNCTION

CASE NO. 14-CV-4557-PSG

1

use of the mark for its current publicity campaign. Second, as described below, the CHOOSE ENERGY mark is distinctive.

A suggestive mark is one for which "a consumer must use imagination or any type of multistage reasoning to understand the mark's significance," since "the mark does not describe the product's features, but suggests them." *Zobmondo Entm't LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010).  The primary criterion for evaluating whether a mark is suggestive is whether it "requires a mental leap from the mark to the product." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1033 (9th Cir. 2010).  CHOOSE ENERGY is suggestive because its meaning as an online marketplace to comparison shop for energy suppliers in deregulated states is not inherently obvious.  It does not expressly describe the services, but rather suggests them.  *See, e.g.*, *Brookfield Comm'cns, Inc. v. West Coast Ent'mt Corp.*, 174 F.3d 1036 (9th Cir. 1999) (MOVIEBUFF suggestive, not descriptive, of database of movie information); *Sinhdarella, Inc. v. Vu*, No. 07-04353, 2008 WL 410246 (N.D. Cal. Feb. 12, 2008) (BOILING CRAB suggestive, not descriptive, of seafood restaurant); *Synergistic Int'l Inc. v. Windshield Doctor Inc.*, No. 03-579, 2003 WL 21468568 (C.D. Cal. Apr. 28, 2003) (GLASS DOCTOR suggestive, not descriptive, of glass repair service).

But even if the mark CHOOSE ENERGY (space) were merely descriptive, it has acquired secondary meaning.  Since 2010, Choose Energy has spent more than $5 million to advertise its online marketplace in connection with the Choose Energy Marks.  Cooper Decl. ¶ 8.  As a result, Choose Energy's website, which prominently uses the Choose Energy Marks, averages 200,000 visitors monthly, with 5.4 million since May 2007. *Id.* ¶ 7.

Accordingly, both the CHOOSEENERGY (no space) mark and the CHOOSE ENERGY (space) mark are legally protectable, and Choose Energy owns both of them.

CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

2

1

### 2.     API's Use Is Likely to Confuse Consumers

Because the services at issue relate significantly to the Internet, three *Sleekcraft* factors take primacy over the others:  (1) similarity of the marks; (2) relatedness of the services; and (3) simultaneous use of the Web as a marketing channel.  *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 1999).  "When this 'controlling troika,' or internet trinity, 'suggests confusion is … likely,' the other factors must 'weigh strongly' against a likelihood of confusion to avoid the finding of infringement."  *See id.* (internal citations omitted).  These three factors can be particularly relevant in evaluating disputes over similar domain names.  *Network Automation v. Advanced Systems Concepts, Inc.,* 638 F.3d 1137 (9th Cir. 2011).

Here the "internet trinity" factors strongly establish a likelihood of confusion.  Other *Sleekcraft* factors provide further evidence of confusion, including the strength of the Choose Energy Marks, the lack of care exercised by Internet users, and API's likely knowledge of Choose Energy's trademark rights.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  But most telling, API's use of the Choose Energy Marks has resulted in significant *actual* confusion, with scores of consumers contacting Choose Energy with the mistaken belief that it is affiliated with API's "Choose Energy" campaign. The factors are discussed below. [1]

### (a)     Internet Trinity Factor 1:  The Parties' Marks Are Identical

API's marks are identical to the Choose Energy Marks.  Both Choose Energy and API use the mark CHOOSEENERGY (no space) in their domain names: <chooseenergy.com> and <chooseenergy.org>, respectively.  The difference between the .com and .org domain names is a *de minimis* distinction that is legally irrelevant.  *See, e.g.*, *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) (finding likelihood of confusion between "MovieBuff" and "moviebuff.com").  Like Choose Energy, API also uses the identical

---

[1] The remaining *Sleekcraft* factor—likelihood of expansion—is not particularly relevant to this dispute.  Choose Energy is not being injured because of the possibility that API will misappropriate Choose Energy's business; rather, Choose Energy's injury is the loss of its goodwill among consumers who associate API's one-sided fossil fuel policy with Choose Energy, thereby eroding its reputation as a transparent and unbiased source of information.

mark CHOOSE ENERGY (space) prominently in its advertisements.  Even comparing the marks CHOOSEENERGY (no space) and CHOOSE ENERGY (space), they are virtually identical, with the exception of the space.  The marks contain the same terms "choose" and "energy" in the same order, and when spoken, the marks sound exactly the same.  *See, e.g.*, *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 f.3D 1127, 1131 (9th Cir. 1998) ("DreamWorks" similar to "Dreamwerks"). Because the marks are identical, this factor strongly favors Choose Energy.

**(b)      Internet Trinity Factor 2: The Parties' Services Are Related**

The parties' services are both directly related to the energy supply industry.  Choose Energy provides a website for consumers to select their ideal energy supplier, and API directs the public to its website to support API's preferred energy source.  Where companies offer services that relate to the same general industry—here, the energy supply sector—actionable "initial interest" confusion may arise.  *Brookfield*, 174 F.3d at 1056, 1062-63.  Furthermore, even consumers who recognize that Choose Energy's website is about selecting energy suppliers may mistakenly believe that Choose Energy and its list of suppliers are sponsored, endorsed, or otherwise affiliated with API. Accordingly, this factor also favors Choose Energy.

**(c)      Internet Trinity Factor 3: The Parties Both Market Their Services Through the Internet**

"Convergent marketing channels increase the likelihood of confusion."  *AMF*, 599 F.2d at 353 (citations omitted).  Choose Energy and API both market their services through the Internet with the websites at <chooseenergy.com> and <chooseenergy.org>, respectively.  Furthermore, API's television advertisements also direct consumers to "Get Involved" with API's "Choose Energy" campaign by visiting the confusingly named <chooseenergy.org> website.  And consumers who search the Internet for "choose energy" (*see* Erickson Decl. ¶ 8) are likely to receive confusing search results such as these:



Under these circumstances, consumer confusion is likely:  "the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion, since . . . it allows for competing marks to be encountered at the same time, on the same screen."  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000).  As such, this factor strongly favors Choose Energy.

### (d)     Choose Energy's Marks Are Strong

Although less distinctive than arbitrary or fanciful marks, suggestive marks will be protected without proof of secondary meaning and can be deemed to be "strong" marks.  *Self-Realization Fellowship Church v. Ananda Church of Self-Realization,* 59 F.3d 902, 910-11 (9th Cir. 1995); *Brookfield Commc'ns, Inc. v West Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999).  The Choose Energy Marks are strong marks deserving of considerable protection from infringing users, bolstered by a decade of continuous and successful use by Choose Energy, and more than $5 million in advertising since 2010. *See E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1291 (9th Cir. 1992) (affirming finding that plaintiff's trademark was strong, based on long continuous use); *Accuride International, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1536 (9th Cir. 1989) ("extensive advertising, length of exclusive use, public recognition and

uniqueness" are all factors that strengthen mark). Choose Energy's advertising efforts and the commercial success of its service have resulted in substantial public association between the Choose Energy Marks and Choose Energy as the source of the service. These facts render Choose Energy's mark strong. *Brookfield*, 174 F.3d at 1058. In any event, this *Sleekcraft* factor is of "diminished importance" where, as here, the services involved are closely related and the marks are nearly identical. *See id.* at 1058-59.

**(e)** **Internet Consumers Do Not Exercise Care**

Both services are accessible over the Internet. The Ninth Circuit has counseled that consumers are unlikely to exercise significant care when navigating the Internet, finding that "navigating amongst web sites involves practically no effort whatsoever, and arguments that Web users exercise a great deal of care before clicking on hyperlinks are unconvincing." *GoTo.com*, 202 F.3d at 1209. Accordingly, this factor also favors Choose Energy.

**(f)** **API Knew or Should Have Known of Choose Energy's Marks**

API is a lobbying arm for the trillion-dollar oil and natural gas industry. That API selected the Choose Energy Marks as the trade name of its "Choose Energy" project, as the domain name for its website <chooseenergy.org>, and as the brand for its publicity campaign, *without knowledge of the identical Choose Energy Marks at the domain name <chooseenergy.com>* is simply incomprehensible. A routine trademark search would have quickly turned up Choose Energy's federally registered mark and Choose Energy's use of the <chooseenergy.com> domain name. Either API was recklessly blind to Choose Energy's intellectual property rights, or API willfully ignored them. As such, this factor strongly favors Choose Energy.

**(g)** **Evidence of Actual Confusion is Substantial**

Evidence showing that the use of two similar marks has already led to confusion is "persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ("Evidence of actual confusion is strong evidence that future confusion is likely . . . ."). Scores of confused consumers have already

CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

6

contacted Choose Energy in the mistaken belief that it is or is related to API, and this confusion has been manifest across the various platforms that Choose Energy engages the public, including its call center, online customer chat interface, and its Twitter account. Cooper Decl. ¶ 13. Choose Energy estimates that its customer service representatives have encountered approximately one hundred instances of customers who have been confused by API's advertising and mistakenly believed that Choose Energy was affiliated or associated with API's "Choose Energy" campaign. *Id.* ¶ 14. Particularly troubling for Choose Energy is the fact that consumers are mistakenly associating API's one-sided fossil-fuel agenda with Choose Energy, thereby damaging Choose Energy's reputation as a trusted resource for transparency and support of clean and renewable energy sources that have a positive impact on the environment. *Id.* ¶ 14, Ex. 4.  In light of the significant actual confusion, this factor strongly favors Choose Energy.

In sum, the *Sleekcraft* factors strongly favor a finding that Choose Energy is likely to succeed in establishing a likelihood of consumer confusion.

### B.    Choose Energy Will Suffer Irreparable Harm Without an Injunction

Evidence of loss of control over business reputation and damage to goodwill are evidence of irreparable harm. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001).  Here, API's unauthorized use is damaging and will continue to damage the positive reputation and goodwill Choose Energy has acquired in the Choose Energy Marks.

As demonstrated above, there is significant evidence of actual confusion as a result of API's "Choose Energy" campaign.  But the injury to Choose Energy is not just "confusion in the marketplace," it is the loss of Choose Energy's goodwill and reputation.  Many consumers who are confused about the association between API and Choose Energy are not merely *confused*, but rather are *hostile* about API's messaging. *See* Cooper Decl. ¶¶ 14-15, Ex. 4.  The public hostility to the Choose Energy Marks, owing to API's campaign, is particularly troubling to Choose Energy, whose business relies principally upon its website and the goodwill and reputation of its marks. Choose Energy's website is the central hub of its business.  Cooper Decl. ¶ 16.  Choose

1   Energy's success and even its survival depends on the ability of Choose Energy's goodwill and

2   reputation in its marks to drive traffic to Choose Energy's website at the <chooseenergy.com>

3   domain name.  *Id.*  Choose Energy's goodwill in the trademarks associated with its website are

4   among its most valuable company assets.  *Id.*

5          But API's one-sided fossil-fuel campaign is causing consumers to associate API's biased

6   energy agenda with the Choose Energy Marks. Even the parents of one of Choose Energy's

7   executives contacted him and expressed confusion that Choose Energy was running national

8   television advertisements and lobbying for the oil and natural gas industry.  Cooper Decl. ¶ 17.

9   This loss of goodwill and reputation in the Choose Energy Marks as a trusted source of unbiased

10  and transparent information regarding energy suppliers is incalculable, and Choose Energy

11  cannot measure the damage that it is suffering by the erosion of its goodwill in the Choose

12  Energy Marks. *Id.*  Accordingly, such injuries cannot be remedied by money damages. *Apple*

13  *Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 526 (9th Cir. 1984).

14         To remediate the extensive consumer confusion in the marketplace, Choose Energy has

15  paid outside consultants; devoted significant executive team resources to developing an adequate

16  response; responded to numerous instances of confusion; initiated outreach on social media to

17  proactively negate the extensive confusion and loss of goodwill; and begun advertising to

18  educate consumers and dispel the confusion. Cooper Decl. ¶ 18.  Without injunctive relief,

19  however, Choose Energy cannot stop the ongoing harm.  API's multimillion dollar ad-campaign

20  is saturating television airwaves, with one ad alone having aired more than 1,500 times.  *Id.* ¶ 19.

21  Choose Energy is a small company that could never match the advertising budget of a trillion-

22  dollar industry.  *Id.*  As such, Choose Energy cannot even begin to measure the harm from the

23  loss to its goodwill and reputation among consumers.

24         **C.      The Balance of Hardships Strongly Favors Choose Energy**

25          Because Choose Energy has shown that it is likely to succeed on the merits and that it is

26  likely to suffer irreparable injury absent an injunction, it is not necessary for the Court to

27

consider whether the balance of hardships tips decidedly in favor of Choose Energy.  *See GoTo.com*, 202 F.3d at 1209.  Even if the Court were to separately consider the balance of hardships, however, Choose Energy will suffer the greater hardship as a result of API's ongoing infringement. As described above, Choose Energy has invested significantly over a decade to develop the goodwill associated with its marks.  API's unauthorized use threatens Choose Energy's exclusive use of the marks up to this point.  Choose Energy is already being forced to take remedial measures to lessen the significant consumer confusion. But Choose Energy cannot by itself stop the ongoing harm.

In contrast, API has no legitimate business interest to protect.  API only recently launched its publicity campaign using Choose Energy's Marks.  "Where the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration."  *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (internal quotations and citations omitted).  Moreover, a knowing infringer cannot be permitted to construct its business around its infringement.  *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983), *cert. dismissed*, 464 U.S. 1033 (1984) (internal citations omitted).  Accordingly, the balance of hardships favors an injunction.

### D.    The Public Interest Favors an Injunction

The public interest also supports injunctive relief because such relief promotes the public interest in clarity and protection of trademarks.  "An important factor in protecting trademarks is to avoid consumer confusion, which is in the public interest."  *Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1205 (D. Nev. 2003).  It is not in the public interest for consumers to be misled that Choose Energy's website is affiliated or associated with API's "Choose Energy" campaign. The public interest militates against allowing API to destroy Choose Energy's goodwill and reputation.

CHOOSE ENERGY'S NOTICE OF MOTION AND
MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE RE PRELIMINARY
INJUNCTION

9

**E.      API's Use Is Not Protected by the First Amendment**

As justification for refusing Choose Energy's demands that API cease infringing Choose Energy's trademarks, API has asserted a First Amendment right to use the marks.  API's infringing use of Choose Energy's trademarks, however, is not protected by the First Amendment. Choose Energy's trademarks have not "transcend[ed] their identifying purpose" or "assume[d] a role outside the bounds of trademark law," and therefore the infringing use of these marks is not protected by the First Amendment.  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002).  Freedom of expression is implicated "when a trademark owner asserts a right to control how we express ourselves—when we'd find it difficult to describe the product any other way (as in the case of aspirin), or when the mark (like Rolls Royce) has taken on an expressive meaning apart from its source-identifying function." *Id.*  That's not the case here. Indeed, API uses "Choose Energy" exclusively as a source-identifying trademark, rather than as protected First Amendment expression. API's website and television advertisements rarely, if ever, use the phrase "choose energy" in a descriptive way. Instead, API uses it as a trade name, a domain name, and otherwise as a source identifier, such as the "Choose Energy Election Center" or the "Choose Energy Candidate Questionnaire."

API is free to promote the oil and gas industry, but it cannot willfully and recklessly infringe Choose Energy's marks in the process. Political messages that use a protected trademark "as a mark" and not "for an expressive purpose such as commentary, comedy, parody, news reporting or criticism" are not protected by the First Amendment.  *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2d Cir. 1997) (finding political use of "United We Stand America" not protected by First Amendment because it was used as a mark).

And courts grant preliminary injunctions, despite claims of First Amendment protection for political speech, when a mark is used for source identification, including in a domain name. *E.g.*, *Planned Parenthood Federation of America, Inc. v. Bucci*, 1997 WL 133313 at *10–11

(S.D.N.Y. 1997), *aff'd*, 152 F.3d 920 (2d Cir. 1998) (unpublished table decision) (enjoining use of domain name <plannedparenthood.com>); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 287 (D.N.J. 1998) (enjoining use of domain name <jewsforjesus.org>); *accord People for Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915 (E.D. Va. 2000) (granting summary judgment to transfer registration of domain name <peta.org>).

Accordingly, API cannot claim an affirmative defense under the First Amendment.

## IV.    CONCLUSION

In light of the foregoing, Choose Energy respectfully moves the Court to enter a temporary restraining order to enjoin Defendant American Petroleum Institute, as well as any related entity or person acting in concert with it, from any use of the CHOOSEENERGY and CHOOSE ENERGY trademarks or any confusingly similar marks, including without limitation any use of the domain name <chooseenergy.org>.


DATED:  October 24, 2014                    RAY QUINNEY & NEBEKER P.C.

                                            /s/ Michael K. Erickson
                                            Mark M. Bettilyon
                                            Michael K. Erickson


                                            SKAGGS FAUCETTE LLP

                                            Jeffrey E. Faucette

                                            *Attorneys for Plaintiff Choose Energy, Inc.*