United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| CHOOSE ENERGY, INC., Plaintiff, v. AMERICAN PETROLEUM INSTITUTE, Defendant. | ) ) ) ) ) ) ) ) ) ) | Case No. 5:14-cv-04557-PSG **ORDER DENYING A TEMPORARY RESTRAINING ORDER** **(Re: Docket No. 9)** |

Plaintiff Choose Energy, Inc. operates an online energy marketplace at www.chooseenergy.com. Sometime this year, Choose Energy discovered Defendant American Petroleum Institute had embarked on a campaign to educate voters about the need to elect officials who support further development of our nation's oil and natural gas reserves. Much to its surprise, API branded its campaign with variations of Plaintiff's CHOOSEENERGY and CHOOSE ENERGY trademarks, including "Choose Energy," "chooseenergy.org" and "I choose energy." Choose Energy then demanded that API cease what Choose Energy saw as blatant infringement of the marks. API begged off, citing its First Amendment right to free speech and committing that its campaign would end no later than November 4, 2014. Choose Energy proceeded to file this suit and now seeks a temporary restraining order to prevent further infringement. Because Choose

United States District Court
For the Northern District of California

Energy does not appear likely to succeed in proving that API offers a "service" subject to the restrictions of the Lanham Act, the court denies the motion.

**I.**

The Trademark Act of 1946 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service.[1] "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.[2] Section 1114(a) is explicit in prohibiting only unauthorized use of a mark "in commerce... in connection with the sale, offering for sale, distribution, or advertising of any goods or services [if] ... such use is likely to cause confusion."

For over ten years, Choose Energy and its online marketplace have allowed individuals and business in deregulated states like California to compare offerings from a diverse group of energy suppliers. These suppliers do not compete on price alone. They also compete on source of supply, allowing options including natural gas plans with carbon offsets and electricity from renewables such as wind and solar to taut their green credentials even if they charge more per kWh. Choose Energy use its domain name and trademarks to emphasize the fact that its services, as opposed to its offerings, are energy unbiased.

API touts itself as the leading trade association for the petroleum and natural gas industry in the United States. API was established to afford a means of cooperation between the industry and the government in matters of national concern, foster foreign and domestic trade in American petroleum products, and promote the interests of the petroleum industry. API has long engaged in

---

[1] *See* 15 U.S.C §§ 1114, 1125(a).

[2] *Bosley Med. Instit., Inc. v. Kremer, Inc.*, 403 F.3d 672, 676-77 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against *the sale of another's product as his.*" [emphasis added] ); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services)).

United States District Court
For the Northern District of California

political messaging activities to advocate the collective views of its members and the petroleum industry as a whole.

Recently, API launched a "Choose Energy" project as part of a campaign aimed at educating voters and encouraging them to engage in conversation about energy issues in the approaching Fall election and to elect officials who support energy initiatives. API says that its sole purpose in this campaign has been to "[e]ducate Americans on key energy issues so that they can make better choices at the ballot box, connect them with candidates for elected office, and build the 'energy vote' leading up to Election Day—November 4, 2014."[3] This is but one example from API's www.chooseenergy.org site:

[3] Docket No. 19 ¶ 5.




THIS ELECTION, Americans have the opportunity to choose candidates who support energy policies that create jobs, enhance our energy security and establish America as a global energy leader. Today America is the world's number-one natural gas producer, but that's just the beginning. America is projected to be the world's number-one oil producer by 2015.*

GET INVOLVED AT ChooseEnergy.org




After learning about API's campaign, Choose Energy wrote a letter to API demanding that its use of "Choose Energy" in its campaign stop. After a period of and consideration and negotiation, API ultimately declined. API's response was curt, declaring that the First Amendment right to free speech justified its use without condition.

United States District Court
For the Northern District of California

Choose Energy responded by filing suit in this court. Choose Energy's complaint alleges that "API has misappropriated Choose Energy's trademarks for a promotional campaign that is *energy biased*—extolling the purported benefits of the oil and natural gas industries and presenting a single choice to consumers: continued dependence upon non-renewable fossil fuels regardless of their adverse impact upon the environment."[4] The complaint further alleges that "API is 'fracking' Choose Energy's brand and is likely to cause confusion, mistake, and to deceive consumers as to the affiliation, connection, or association of API with Choose Energy. API's unauthorized use of Choose Energy's trademarks is a violation of Choose Energy's valuable intellectual property rights and is causing significant injury to Choose Energy's reputation and customer goodwill."[5]

Choose Energy seeks damages, attorney's fees and costs, and most importantly for present purposes, an injunction. Not content with API's commitment under penalty of perjury that its campaign will end come election day, Choose Energy asks the court to issue a temporary restraining order pursuant to Fed. R. Civ. P. 65(b). One court day after receiving Choose Energy's TRO motion, the court authorized API to file a response brief in advance of an extended hearing held earlier today.

**II.**

The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[6]

Choose Energy may well be right that it faces a substantial likelihood of confusion: the parties' marks are nearly identical, their services are similar, and perhaps API should have known

---

[4] Docket No. 1 at 2.

[5] *Id.*

[6] *See* Docket Nos. 7, 13.

United States District Court
For the Northern District of California

better.[7] Choose Energy's allegations and new evidence also strongly suggest harm to the reputation and good will of the company.[8] But the court must first consider whether Choose Energy is likely to succeed on the merits under the Lanham Act. A careful review of the law and the evidence identified thus far reveals that Choose Energy in fact is unlikely to succeed on the merits given the lack of competition between the parties and their services. This leaves the court with nothing to do but deny Choose Energy's request for a temporary restraining order.

**III.**

For a temporary restraining order to be granted, a plaintiff must show that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in its favor, and an injunction is in the public interest.[9] Paramount among these factors is the required showing of likely success on the merits. Even if all other factors were to weigh in a plaintiff's favor, if she cannot show likelihood of success, her motion fails. Such is the fate of Choose Energy's motion here.

The plain language of the statute requires that Choose Energy show API used its mark in connection with goods or services.[10] It is undisputed that no goods are at issue. So to fall within the ambit of the statute, the infringing mark must be classifiable as a service as contemplated by the statute. Through its website—chooseenergy.org—API provides "political messaging strategy" that educates voters and encourages them to engage in the political discourse about energy and to elect

---

[7] *See* Docket No. 4 at 3-6.

[8] *See* Docket No. 7.

[9] *See Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *see also GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000).

[10] *See* 15 U.S.C. § 1114(1)(a) (the mark must be used "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.").

United States District Court
For the Northern District of California

officials who support specific energy initiatives.[11] But there is not even a whiff of commercial activity surrounding API's chooseenergy.org campaign.[12]

API's activities are clearly—and undisputedly—political in nature. They are also wholly and completely distinct from the commercial services offered by Choose Energy. There is no world in which API's online political activity might compete with Choose Energy's non-partisan, commercial energy platform. This leaves the court with a single question: can API's political activities trigger liability under the statute where API is not in competition with Choose Energy?

Citing the Second Circuit in *United We Stand*, Choose Energy correctly suggests that political activities can trigger liability under the Lanham Act.[13] The Ninth Circuit—and this court—agree. But that does not wave Choose Energy past first base, let alone into home plate. Even while citing *United We Stand*, the Ninth Circuit insists that without competition, political activity alone is not sufficient:

> The Second Circuit held in *United We Stand* . . . that the 'use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services. Thus, the appropriate inquiry is whether [Defendant] offers *competing* services to the public.[14]

---

[11] *See id*. at 3.("The sole purpose of this messaging has been to '[e]ducate Americans on key energy issues so that they can make better choices at the ballot box, connect them with candidates for elected office, and build the 'energy vote' leading up to Election Day—November 4, 2014.").

[12] *See* Docket No. 17 at 8 ("API's 'chooseenergy.org' website contains no advertisements or links to any commercial website, does not offer any products or services for sale, and confers no financial benefit to API.").

[13] *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 89-90 (2d Cir. 1997)

> Since [UWSANY's] incorporation, it has engaged in political organizing; established and equipped an office; solicited politicians to run on the UWSANY slate; issued press releases intended to support particular candidates and causes; endorsed candidates; and distributed partisan political literature. These are the services characteristically rendered by a political party to and for its members, adherents, and candidates. Although not undertaken for profit, they unquestionably render a service. We have no doubt that they satisfy § 1114(1)(a)'s requirement that the mark be used in connection with goods or services.

[14] *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (emphasis in original); *see also Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 795 (9th Cir. 2012) ("At

Since the Ninth Circuit's ruling in *Bosley*, other district courts have followed suit, applying *United We Stand* through the lens of *Bosley* and *Washington State Grange*.[15] This court has no choice but to do the same.

As discussed above, there is no evidence in the record that Choose Energy and API compete in any way that could bring the claim within the purview of the Lanham Act. Choose Energy thus has failed to show a likelihood of success on the merits, which dooms its motion for a temporary restraining order before the court can even proceed any further.

**SO ORDERED.**

Dated: October 28, 2014

PAUL S. GREWAL
United States Magistrate Judge

minimum, however, the plaintiff must show that the defendant offers *competing* services to the public." (emphasis in original) (internal quotations omitted)).

[15] *See, e.g.*, *Stanislaus Custodial Deputy Sheriffs' Assoc. v. Deputy Sheriff's Assoc. of Stanislaus Cnty.*, Case No. CV F 09-1988, 2010 WL 843131, at *6 (E.D. Cal. Mar. 20, 2010) ("Thus, *United WE Stand America*, at best for plaintiff, stands for the proposition that if an actual sale of goods is not involved, the infringer must be engaged in some form of . . . *competition*." (emphasis in original)).



United States District Court
For the Northern District of California