UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHOOSE ENERGY, INC., | Case No. 5:14-cv-04557-PSG |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE** |
| v. | |
| AMERICAN PETROLEUM INSTITUTE, | **(Re: Docket Nos. 20, 32)** |
| Defendant. | |

Last October, Plaintiff Choose Energy, Inc. filed this trademark infringement action against Defendant American Petroleum Institute over API's use of "choose energy" in its pre-election promotional campaign. In the days leading up to the November election, Choose Energy sought a temporary restraining order to require API to take down its website at chooseenergy.org. This court denied such relief, finding insufficient likelihood of success on Choose Energy's claims, particularly in light of Choose Energy's inability to establish that it competes with API. With the election in the rear view mirror—and the website at issue no longer in operation—API now moves to dismiss Choose Energy's federal and state law claims and moves to strike Choose Energy's state law claims under California's anti-SLAPP statute. Both motions are GRANTED.

1

Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE

**I.**

The Trademark Act of 1946 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service.[1] "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers.[2] Section 1114(a) is explicit in prohibiting only unauthorized use of a mark "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services [if] . . . such use is likely to cause confusion."

For over ten years, Choose Energy and its online marketplace have allowed individuals and businesses in deregulated states like California to compare offerings from a diverse group of energy suppliers.[3] These suppliers do not compete on price alone.[4] They also compete on source of supply, allowing options including natural gas plans with carbon offsets and electricity from renewables such as wind and solar to tout their green credentials even if they charge more per kWh.[5] Choose Energy uses its domain name and trademarks to emphasize the fact that its services, as opposed to its offerings, are not energy biased.[6]

---

[1] *See* 15 U.S.C §§ 1114, 1125(a).

[2] *Bosley Med. Instit., Inc. v. Kremer, Inc.*, 403 F.3d 672, 676-77 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty,* 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against *the sale of another's product as his.*" (emphasis added)); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,* 316 U.S. 203, 205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services).

[3] *See* Docket No. 1 at ¶ 12.

[4] *See id.* at ¶ 13.

[5] *See id.*

[6] *See id*.

API touts itself as the leading trade association for the petroleum and natural gas industry in the United States.[7]  API was established to afford a means of cooperation between the industry and the government in matters of national concern, foster foreign and domestic trade in American petroleum products and promote the interests of the petroleum industry.[8]  API has long engaged in political messaging activities to advocate the collective views of its members and the petroleum industry as a whole.[9]

Last year, API launched a "Choose Energy" project as part of a campaign aimed at educating voters and encouraging them to engage in conversation about energy issues in the 2014 election and to elect officials who support energy initiatives.[10]  API says that its sole purpose in this campaign, including its website at chooseenergy.org, was to "encourage voters to make energy a ballot box decision and to educate themselves in assessing candidates' energy policies" leading up to the November 4, 2014 election.[11]

After learning about API's campaign, Choose Energy wrote a letter to API demanding that its use of "Choose Energy" in its campaign stop.  After a period of consideration and negotiation, API ultimately declined.  API's response was curt, declaring that the First Amendment right to free speech justified its use without condition.

Choose Energy responded by filing suit in this court.  Choose Energy's complaint alleges that "API has misappropriated Choose Energy's trademarks for a promotional campaign that is *energy biased*—extolling the purported benefits of the oil and natural gas industries and presenting a single choice to consumers: continued dependence upon non-renewable fossil fuels regardless of

---

[7] *See* Docket No. 20 at 1.

[8] *See id.*

[9] *See id*.

[10] *See* Docket No. 1 at ¶ 21.

[11] Docket No. 20 at 3.

3
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE

their adverse impact upon the environment."[12]  The complaint further alleges that "API is 'fracking' Choose Energy's brand and is likely to cause confusion, mistake, and to deceive consumers as to the affiliation, connection, or association of API with Choose Energy. API's unauthorized use of Choose Energy's trademarks is a violation of Choose Energy's valuable intellectual property rights and is causing significant injury to Choose Energy's reputation and customer goodwill."[13]

Choose Energy sought a temporary restraining order to shut down chooseenergy.org mere days before last year's election, which this court denied, finding that the Lanham Act did not apply because Choose Energy and API do not compete and that Choose Energy could not show a likelihood of prevailing on the merits.[14]  Consistent with API's commitment under penalty of perjury that its campaign would end come election day, API's website no longer contains any content.[15]  API now moves to dismiss Choose Energy's federal and state law claims under Fed. R. Civ. P. 12(b)(6) and further moves to strike Choose Energy's state law claims under Cal. Code of Civ. Proc. § 425.16 (the California "anti-SLAPP" statute).

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.  The parties further consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[16]

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[17]  If a plaintiff

---

[12] Docket No. 1 at 2 (emphasis in original).

[13] *Id.*

[14] *See* Docket No. 24.

[15] *See* http://www.chooseenergy.org.

[16] *See* Docket Nos. 7, 13.

4
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE

fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[18] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] Against these standards, none of Choose Energy's claims pass muster.

### III.

*First*, Choose Energy has not alleged facts sufficient to state a claim under the Lanham Act. In order for the alleged conduct to fall within the Act's purview, Choose Energy must allege that API used its mark in connection with goods or services.[20] It is undisputed that no goods are at issue. So to fall within the ambit of the statute, the infringing mark must be alleged to be for a classifiable service as contemplated by the statute. Through its website chooseenergy.org, API provides "political messaging strategy" that educates voters and encourages them to engage in the political discourse about energy and to elect officials who support specific energy initiatives.[21] But Choose Energy has not plausibly alleged that these or any other API activities could be construed as classifiable services.[22] Other than making the broad-sweeping allegation that "API is making

---

[17] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[18] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[19] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[20] *See* 15 U.S.C. § 1114(1)(a) (the mark must be used "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.").

[21] *See* Docket No. 20 at 3 ("It is clear that API's use of the terms 'Choose Energy' and 'I choose energy' are part of a purely political message intended to encourage voters to make energy a ballot box decision and to educate themselves in assessing candidates' energy policies.").

[22] *See* Docket No. 1 at ¶¶ 21-29 (generally alleging that API's use of its mark causes customer confusion but neglecting to point to any specific acts or services that might constitute a violation under the Lanham Act).

5
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE

commercial use of the Choose Energy Marks,"[23] the complaint does not allege that API is selling, offering to sell, distributing or advertising any services at all.[24] And although Choose Energy attempts to erect new arguments in its opposition—relying on API's television commercials as an advertising hook for services—no such allegation is in the complaint.[25]

To the extent that Choose Energy relies on *United We Stand* to argue that political activities can be construed as services to trigger liability under the Lanham Act,[26] the argument is misplaced. Choose Energy would still have to show that API competes with Choose Energy in the provision of that service.[27] And that Choose Energy simply does not do. As this court previously found, there is no world in which Choose Energy and API could compete.[28] And there is no colorable claim of

---

[23] *See id.* at ¶ 21.

[24] *See* 15 U.S.C. § 1114(1)(a).

[25] In any event, Choose Energy's reliance on API's status as a trade organization and the fact that API promotes the sale of petroleum does not hold water. While API may be financed by or represent—in some capacity—corporations that sell petroleum, Choose Energy can point to no individual statements in API's political campaign materials that advertise the sale of petroleum to consumers.

[26] *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 89-90 (2d Cir. 1997):

> Since [UWSANY's] incorporation, it has engaged in political organizing; established and equipped an office; solicited politicians to run on the UWSANY slate; issued press releases intended to support particular candidates and causes; endorsed candidates; and distributed partisan political literature. These are the services characteristically rendered by a political party to and for its members, adherents, and candidates. Although not undertaken for profit, they unquestionably render a service. We have no doubt that they satisfy § 1114(1)(a)'s requirement that the mark be used in connection with goods or services.

[27] *See Bosley Med. Inst.*, 403 F.3d at 679 ("The Second Circuit held in *United We Stand* . . . that the 'use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services. Thus, the appropriate inquiry is whether [Defendant] offers *competing* services to the public." (emphasis in original)); *see also Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 795 (9th Cir. 2012) ("At minimum, however, the plaintiff must show that the defendant offers *competing* services to the public." (emphasis in original) (internal quotation marks omitted)); *see also Stanislaus Custodial Deputy Sheriffs' Assoc. v. Deputy Sheriff's Assoc. of Stanislaus Cnty.*, Case No. 09-cv-01988, 2010 WL 843131, at *6 (E.D. Cal. Mar. 20, 2010) ("Thus, *United W[e] Stand America*, at best for plaintiff, stands for the proposition that if an actual sale of goods is not involved, the infringer must be engaged in some form of . . . *competition*." (emphasis in original)).

[28] *See* Docket No. 24.

customer confusion because it is impossible for a customer to purchase a good or service from API thinking that it was purchasing that good or service from Choose Energy. Especially when API does not sell any goods or services at all.

While Choose Energy's complaint is devoid of any allegation that it is in competition with API, Choose Energy's final attempt to identify such competition in its brief is unavailing. In particular, Choose Energy argues that API and Choose Energy compete as ideological rivals to educate Americans on key energy issues. But this is contrary to Choose Energy's claims in its own complaint that it "provides a commercial service that is energy unbiased" that allows consumers to make choices about their energy use.[29] While the complaint alleges that many of Choose Energy's customers choose clean energy sources, the unbiased nature of Choose Energy's services presupposes that consumers also can choose energy plans that rely on petroleum. Without plausible allegations that API provided a competing service, the Lanham Act claim cannot stand. API's motion to dismiss must be GRANTED.

***Second***, Choose Energy has failed to state a claim on its state law causes of action. In the Ninth Circuit, trademark claims and unfair competition claims under California state law are "substantially congruent" with federal trademark and unfair competition claims.[30] Under the same reasoning outlined above, the court DISMISSES Choose Energy's state law claims.

***Third***, Choose Energy's state law claims cannot overcome California's anti-SLAPP law. In order to prevail on an anti-SLAPP motion, a defendant "must show that the lawsuit arises from exercising his right of free speech under the United States Constitution in connection with a public

---

[29] *See* Docket No. 1 at ¶¶ 12-14.

[30] *See Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) (quoting *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020 n.10 (9th Cir. 2004)); *Yelp Inc. v. Catron*, Case No. 13-cv-02859, 2014 WL 4966706, at *10 (N.D. Cal. Oct. 1, 2014).

issue."[31] The burden then shifts to the plaintiff to "demonstrate a probability of prevailing on the claim or the claim will be stricken."[32]

As to API's initial burden, the anti-SLAPP statute protects a defendant's free speech, including written or oral speech made in a public forum about an issue of public interest.[33] The California Supreme Court has found that the statute protects both private and corporate speech,[34] that websites constitute "public forums" for the purpose of anti-SLAPP[35] and that an issue of public interest "is any issue in which the public is interested."[36]

Here, Choose Energy sued API over language—"choose energy"—that reasonably constitutes political speech about a public issue—energy policy. The complaint references allegedly offending activities such as operating the mid-term election campaign website with the domain name www.chooseenergy.org and using statements such as "I choose energy," "Choose job growth" and "Choose energy security" on API's website as part of its political platform.[37] But these activities are all central to API's political activity and constitute protected speech as

---

[31] C.C.P. § 425.16(b)(1); *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 142 (2011).

[32] *Id.*

[33] The anti-SLAPP statute enumerates several kinds of protected speech:

1. any written or oral statement made before a legislative, executive, or judicial proceeding authorized by law;
2. any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any official proceeding authorized by law;
3. any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;
4. any other conduct in furtherance of the exercise of the constitutional right of free speech in connection with a public issue or an issue of public interest.  CCP § 42516(e)(1)-(4).

[34] *See Kronemyer v. Internet Movie Data Base, Inc.*, 150 Cal. App. 4th 941, 949 (2007).

[35] *See, e.g.*, *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (2004).

[36] *Nygard Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1043 (2008).

[37] *See* Docket No. 1 at ¶¶ 21-22.

contemplated by the anti-SLAPP statute: the information is conveyed in a public forum—the internet—and addresses energy policy—an issue that is currently the subject of pending legislative efforts and one of public concern.

Choose Energy counters by arguing that API's use of "choose energy" was a source-identifier and thus not entitled to First Amendment protection.[38]  But this argument is misguided. While there is case law that protects a trademark where the accused use was a source identifier, in none of those cases was the alleged source identifier also the political speech at issue.[39]  Moreover, the cited cases dealt with trademark dilution claims rather than trademark infringement.[40]  Here, the speech at issue clearly conveys API's political message.  And even if a consumer were to mistakenly visit API's website at chooseenergy.org when she intended to visit chooseenergy.com, she would not be able to purchase any services, eliminating the possibility that the source of services might be confused.

Both parties rely on the key Ninth Circuit case that is on point here—*Bosley Medical Institute, Inc. v. Kremer*.[41]  In *Bosley*, the court pointed out that in the context of an anti-SLAPP motion, "[a]n infringement lawsuit by a trademark owner over a defendant's unauthorized use of the mark as his domain name does not necessarily impair the defendant's free speech rights."[42] While Choose Energy emphasizes the Ninth Circuit's recognition that "[a] significant purpose of a

---

[38] *See Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 700 (N.D. Ohio 2002).

[39] *See, e.g.*, *id.*; *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, Case No. 97-cv-00629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997); *United We Stand America*, 128 F.3d 86 (2d Cir. 1997); *Anheiser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769 (8th Cir. 1994); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397 (8th Cir. 1987).

[40] *See id*.

[41] 403 F.3d 672 (9th Cir. 2005).

[42] *Id*. at 628 (emphasis omitted); *see also Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000) ("[d]omain names . . . *per se* are neither automatically entitled to nor excluded from the protections of the First Amendment, and the appropriate inquiry is one that fully addresses particular circumstances presented with respect to each domain name.").

9
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO STRIKE

domain name is to identify the entity that owns the web site,"[43] there can be no claim here that API sought to identify Choose Energy—the company—as opposed to "Choose Energy"—API's campaign slogan. Coupled with the fact that API's website was non-commercial in nature, as discussed above, API's conduct falls within the protection of the anti-SLAPP statute.

As to the burden shifted to Choose Energy, "[t]he standard for an anti-SLAPP motion—probability of prevailing on the merits—presents a higher burden than the plausibility standard applied for a motion to dismiss. If Plaintiffs cannot plead a plausible cause of action under the [Fed. R. Civ. P.] 12(b)(6) standard, then Plaintiffs as a matter of law cannot meet the probability of success on the merits standard [under C.C.P. § 425.16]."[44] As the court previously found in denying Choose Energy's motion for a temporary restraining order, and as the court noted above in granting API's motion to dismiss, Choose Energy cannot make a showing of probability of success on the merits to survive an anti-SLAPP motion to strike. The motion to strike is GRANTED.

As for whether to grant Choose Energy leave to amend, because the court is not yet persuaded that amendment of the federal claims would be futile,[45] Choose Energy is GRANTED leave to amend those claims. But as to the state law claims, the court is concerned about a potential conflict of state and federal law.[46] Under Fed. R. Civ. P. 15(a), federal courts adopt a

---

[43] *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998).

[44] *Xu v. Yamanaka*, Case No. 13-cv-03240, 2014 WL 342271, at *4 (N.D. Cal. Jan. 30, 2014); *see also Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1236 (2003) (Plaintiff must be able to show that its claims have merits based on "competent and admissible evidence."); *Bernardo v. Planned Parenthood Federation of Am.*, 115 Cal. App. 4th 322, 359 (2004) (If a plaintiff fails to state a legally sufficient claim, the court must dismiss the action under the anti-SLAPP statute.).

[45] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[46] *See Verizon Delaware, Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) (cautioning that when anti-SLAPP motions are brought in federal court to strike state law claims, "procedural state laws [cannot be] used in federal court if to do so would result in a direct collision with a Federal Rule of Civil Procedure" (quoting *Metabolife Int'l v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001))).

liberal view towards granting amendment—particularly when dismissing a plaintiff's initial complaint.[47]  And while the Ninth Circuit permits anti-SLAPP motions to strike to be brought in federal court as to state law claims,[48] the Ninth Circuit has steadily chipped away at the anti-SLAPP statute's striking power in light of its frequent collision with the Federal Rules,[49] ultimately finding that "the purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint.  If the offending claims remain in the first amended complaint, the anti-SLAPP remedies remain available to defendants."[50]  Some courts in this district have fallen in line with *Verizon Delaware*,[51] whereas others have found that "[a]llowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing

---

[47] Fed. R. Civ. P. 15(a); *see Eminence Capital, LLC*, 316 F.3d at 1051-52 (9th Cir. 2003) ("Generally, Rule 15 advises the court that 'leave shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" (quoting Fed. R. Civ. P. 15(a); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001))).

[48] *See United States ex. Rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999).

[49] *See, e.g.*, *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001) (holding that the "discovery-limiting aspects" of the anti-SLAPP statute do not apply in federal court); *see also Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("After *Metabolife*, the federal court special motion is a far different (and tamer) animal than its state-court cousin.  *Metabolife* diminished some of the tension between the state and federal schemes, but at the expense of depriving the state scheme of its key feature: giving defendants a quick and painless exit from the litigation.").

[50] *Verizon Delaware, Inc.*, 377 F.3d at 1091.

[51] *See, e.g.*, *Choyce v. SF Bay Area Indep. Media Ctr.*, Case No. 13-cv-01842, 2013 WL 6234628, at *11 (N.D. Cal. Dec. 2, 2013) (finding that *Verizon Delaware* requires that "when dismissing a claim pursuant to the anti-SLAPP statute, a plaintiff should be granted leave to amend and re-assert the stricken claims, although with the proviso that the newly amended complaint would then also be subject to yet another anti-SLAPP motion"); *Art of Living Found. v. Does*, Case No. 10-cv-05022, 2011 WL 2441898, at *9 (N.D. Cal. June 15, 2011) (following *Verizon Delaware* and finding that "because it is not clear that leave to amend would be futile, and this is Plaintiff's initial complaint, striking Plaintiff's initial Complaint would 'directly collide' with Rule 15's liberal amendment policy").

the pleader a ready escape from [the anti-SLAPP statute's] quick dismissal remedy."[52] Neither party briefed this issue in their papers.

To remedy this deficiency, within seven (7) days of this order, the parties shall meet and confer about whether leave to amend the state law claims also is warranted. If the consensus is yes, the parties shall file an appropriate stipulation within 21 days of this order. If no consensus is reached, within 21 days of this order, each party shall submit up to five (5) pages outlining their position. Choose Energy's deadline for filing any amended federal claims shall be seven (7) days from the filing of a stipulation or a court order resolving the parties' dispute.[53]

**SO ORDERED.**

Dated: April 8, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[52] *Harper v. Lugbauer*, Case No. 11-cv-01306, 2012 WL 1029996, at *6 (N.D. Cal. Mar. 15, 2012) (quoting *Smith v. Santa Rosa Democrat*, Case No. 11-cv-02411, 2011 WL 5006463, at *7 (N.D. Cal. Oct. 20, 2011)).

[53] Only after the court resolves this dispute shall API pursue any fee or cost award.