UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHOOSE ENERGY, INC., | Case No. 5:14-cv-04557-PSG |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | |
| AMERICAN PETROLEUM INSTITUTE, | **(Re: Docket No. 70)** |
| Defendant. | |

In this trademark infringement action initiated in the days leading up to last November's elections, Defendant American Petroleum Institute moves to dismiss Plaintiff Choose Energy, Inc's Lanham Act claims for a second time. Having previously denied Choose Energy's motion for a temporary restraining order and dismissed Choose Energy's original complaint, with leave to amend its federal claims, the court GRANTS API's second motion to dismiss, this time without leave to amend.

**I.**

The Trademark Act of 1946 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service.[1] "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to

---

[1] *See* 15 U.S.C §§ 1114, 1125(a).

1
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

confuse potential consumers."[2] Section 1114(a) is explicit in prohibiting only unauthorized use of a mark "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services [if] . . . such use is likely to cause confusion."

For over ten years, Choose Energy and its online marketplace have allowed individuals and businesses in deregulated states like California to compare offerings from a diverse group of energy suppliers.[3] These suppliers do not compete on price alone.[4] They also compete on source of supply, allowing options including natural gas plans with carbon offsets and electricity from renewables such as wind and solar to tout their green credentials even if they charge more per kWh.[5] Choose Energy uses its domain name and trademarks to emphasize the fact that its services, as opposed to its offerings, are not energy biased.[6]

API touts itself as the leading trade association for the petroleum and natural gas industry in the United States.[7] API was established to afford a means of cooperation between the industry and the government in matters of national concern, foster foreign and domestic trade in American petroleum products and promote the interests of the petroleum industry.[8] API has long engaged in political messaging activities to advocate the collective views of its members and the petroleum industry as a whole.[9]

---

[2] *Bosley Med. Instit., Inc. v. Kremer, Inc.*, 403 F.3d 672, 676-77 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942) (explaining that the main purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services)).

[3] *See* Docket No. 67 at ¶ 11.

[4] *See id.* at ¶ 13.

[5] *See id.*

[6] *See id.*

[7] *See* Docket No. 20 at 1.

[8] *See id.*

[9] *See id.*

Last year, API launched a "Choose Energy" project as part of a campaign aimed at educating voters and encouraging them to engage in conversation about energy issues in the 2014 election and to elect officials who support energy initiatives.[10] API says that its sole purpose in this campaign, including its website at chooseenergy.org, was to "encourage voters to make energy a ballot box decision and to educate themselves in assessing candidates' energy policies" leading up to the November 4, 2014 election.[11]

After learning about API's campaign, Choose Energy wrote a letter to API demanding that its use of "Choose Energy" in its campaign stop. After a period of consideration and negotiation, API ultimately declined. API's response was curt, declaring that the First Amendment right to free speech justified its use without condition.

Choose Energy responded by filing suit in this court and immediately seeking a temporary restraining order to shut down chooseenergy.org. The court denied the TRO motion, finding that the Lanham Act did not apply because Choose Energy and API do not compete and that Choose Energy could not show a likelihood of prevailing on the merits.[12] Consistent with API's commitment under penalty of perjury that its campaign would end come election day, API's website no longer contains any content.[13] API then moved to dismiss Choose Energy's federal and state law claims under Fed. R. Civ. P. 12(b)(6) and to strike Choose Energy's state law claims under Cal. Code of Civ. Proc. § 425.16 (the California "anti-SLAPP" statute). This court granted both motions, allowing leave to amend only as to Choose Energy's Lanham Act claims. Now, for a third and final time, the court considers the plausibility of Choose Energy's allegations.

---

[10] *See* Docket No. 67 at ¶ 2.

[11] Docket No. 20 at 3.

[12] *See* Docket No. 24.

[13] *See* http://www.chooseenergy.org.

3
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

**II.**

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[14]

Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[15] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[16] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17] Against these standards, Choose Energy's claims fail.

**III.**

This court previously held that Choose Energy had not alleged facts sufficient to state a plausible claim under the Lanham Act. Specifically, the court was not satisfied with Choose Energy's allegations that (1) API uses Choose Energy's mark in the provision of services and (2) API uses Choose Energy's mark to compete with Choose Energy. Although the court had by then twice found that Choose Energy's claims were insufficient, under the Ninth Circuit's liberal policy favoring amendment, the court granted such leave.[18] Choose Energy's latest attempt, however, remains unpersuasive.

*First*, Choose Energy still does not allege that API's activities in connection with its election campaign constitute services as required by the Lanham Act.[19] Instead, Choose Energy

---

[14] *See* Docket Nos. 7, 13.

[15] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[16] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[18] *See* Docket Nos. 24, 63.

[19] *See* 15 U.S.C. § 1114(1)(a) (the mark must be used "in commerce . . . in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.").

4
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

adds new allegations about API's other activities, unrelated to chooseenergy.org. Choose Energy points to marks registered to API—such as ENERGY API and ENERGY TOMORROW—to suggest that API must engage in services because API so certified in its sworn statements to the United States Patent and Trademark Office.[20] There is no doubt that API uses those marks in connection with provision of services. But Choose Energy's allegations tying such services to its chooseenergy.org campaign are implausible. Nothing prohibits an organization from providing services in certain capacities and engaging in pure political speech in another.[21]

Choose Energy also resurrects its argument that because API is a trade association that operates in a commercial sphere, it provides Lanham Act-sufficient services.[22] Specifically, Choose Energy casts API as catering to "big business."[23] The inquiry here is not about whether API provides any services at all, to big business or anyone else, only whether API provides services in connection with the Choose Energy mark. And that, Choose Energy has not plausibly alleged. Instead of alleging any promotional information that encourages consumers to buy petroleum or petroleum-based products—as this court previously suggested Choose Energy might do[24]—the best Choose Energy can do is allege that the Choose Energy campaign "distributed advertising and other promotional information as a service to API's members . . . that promoted the purported benefits of the petroleum industry."[25] This does not sound in commerce, especially in the absence of "classic" indicia of trademark usage, such as using a mark to identify an

---

[20] *See* Docket No. 67 at ¶¶ 21-24.

[21] Choose Energy also points to similar Google and Youtube search results as "evidence" that ENERGY TOMORROW and chooseenergy.org both provide related services. *See* Docket No. 74 at 6-7. But simply because the internet associates two concepts or two terms does not mean that they are one and the same.

[22] *See* Docket No. 67 at ¶¶ 29-34.

[23] *See* Docket No. 74 at 11 ("[W]hen API's business is politics, its politics is not just business, it is big business."). The Supreme Court has expressly held that "political speech does not lose First Amendment protection simply because its source is a corporation." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342 (2010) (internal quotation marks omitted).

[24] *See* Docket No. 63 at 6 n.25.

[25] *See* Docket No. 67 at ¶ 31.

5
Case No. 5:14-cv-04557-PSG
ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT

organization, to raise funds, to attract members or to engage in cyberpiracy.[26]  Rather, it aligns with API's stated purpose of providing "political messaging strategy" that educates voters and encourages them to engage in the political discourse about energy and to elect officials who support specific energy initiatives.[27]  Merely labeling API's campaigning efforts "advertisements" does not bring Choose Energy's allegations into the realm of *Twombly-Iqbal* plausibility.[28]

*Second*, Choose Energy again fails to allege competition as required by the Lanham Act. In *Bosley Medical Institute v. Kremer*, the Ninth Circuit explained that where there are no actual sales of goods or services at issue, the Lanham Act can still apply if the defendant offers "competing services to the public."[29]  But as discussed above, in its original complaint Choose

---

[26] *See, e.g.*, *Hershey Co. v. Friends of Steve Hershey*, 33 F. Supp. 3d 588 (D. Md. 2014) (finding infringement where the activity was not a political message but intentional copying of plaintiff's trade dress that the candidate used to solicit donations); *MasterCard Int'l Inc. v. Nader 2000 Primary Comm, Inc.*, Case No. 00-cv-06068, 2004 WL 434404 (S.D.N.Y. Mar. 8, 2004) (finding infringement where political candidate Ralph Nader intentionally copied the look and feel of a well-known MasterCard advertisement, which he used to solicit money through a "donate online" feature); *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86 (2d Cir. 1997) (finding infringement where a splinter political organization used a nearly identical name as the original organization to compete for the same members and donations); *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, Case No. 97-cv-00629, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) (finding infringement where the offending activity was not defendant's political anti-abortion message but rather defendant's cyberpiracy and creation of a website designed to intentionally mislead Internet users).

[27] *See* Docket No. 20 at 3 ("It is clear that API's use of the terms 'Choose Energy' and 'I choose energy' are part of a purely political message intended to encourage voters to make energy a ballot box decision and to educate themselves in assessing candidates' energy policies.").

[28] *Cf. WHS Entm't Ventures v. United Paperworkers Int'l Union*, 997 F. Supp. 946, 950-51 (M.D. Tenn. 1998) (finding the Lanham Act not triggered by a union's flyer that simply conveyed a labor dispute message, in contrast to advertising the union itself or its services); *Tax Capp Comm. v. Save Our Everglades, Inc.*, 933 F. Supp. 1077, 1080-81 (S.D. Fla. 1996) (finding no liability where a flyer conveyed an environmental message and defendant was "not seeking to establish an identity, to raise funds, or to attract members"); *Lucasfilm Ltd. v. High Frontier*, 622 F. Supp. 931, 934-35 (D.D.C. 1985) (finding that defendant's use of "star wars" in public policy television advertising did not trigger liability when "star wars" did not name or advertise defendant); *Cellco P'ship v. Commc'n Workers of Am.*, Case No. 02-cv-05542, 2003 WL 25888375, at *9-12 (D.N.J. Dec. 11, 2003) (finding the Lanham Act not triggered when pamphlet bolstered labor message, but did not promote defendant union).

[29] *See Bosley Med. Inst.*, 403 F.3d at 679 ("The Second Circuit held in *United We Stand . . .* that the 'use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services.  Thus, the appropriate inquiry is whether [Defendant] offers *competing* services to the public." (emphasis in original)); *see also Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 795 (9th Cir. 2012) ("At minimum, however, the plaintiff must show that the defendant offers *competing* services to the public." (emphasis in original) (internal quotation marks omitted)); *see also Stanislaus Custodial Deputy Sheriffs' Assoc.*

1   Energy did not plausibly allege that API sells or advertises services.  So, applying *Bosley*, the court
2   previously held that Choose Energy must show that it competes with API at least in offering
3   services to the public.

4   Instead of adding allegations of such competition, Choose Energy urges a different, and
5   ultimately flawed, reading of *Bosley*.  A party cannot, however, simply rewrite Ninth Circuit
6   precedent to bolster its case.  Under Choose Energy's interpretation, *Bosley* would require that the
7   parties merely offer distinct services rather than that they directly compete.  Choose Energy urges
8   that because the purpose of the Lanham Act is to prevent customer confusion, the Ninth Circuit
9   only used the term "competing services" to emphasize that any such services must be distinct.[30]
10  Notably, the opinion is void of any such discussion of distinct services.  It also is illogical to
11  conclude that the Ninth Circuit would use the word "compete" in the context of a Lanham Act
12  analysis to express a requirement that does not involve competition.  The court rejects such an
13  interpretation in favor of *Bosley*'s plain language: that "the appropriate inquiry is whether
14  [Defendant] offers competing services to the public."[31]

15  Choose Energy nevertheless argues that even if *Bosley* requires competition—as this court
16  holds it does—the two parties compete in the provision of educational services, specifically that
17  they "compete to educate Americans about energy use, consumption, resources, and policy, and
18  [that] each delivers any educational service that furthers its respective commercial interests."
19  While Choose Energy has adequately alleged that Choose Energy educates the public about energy,

---

*v. Deputy Sheriff's Assoc. of Stanislaus Cnty.*, Case No. 09-cv-01988, 2010 WL 843131, at *6 (E.D. Cal. Mar. 20, 2010) ("Thus, *United W[e] Stand America*, at best for plaintiff, stands for the proposition that if an actual sale of goods is not involved, the infringer must be engaged in some form of . . . *competition*." (emphasis in original)).

[30] *See* Docket No. 74 at 16.

[31] *See Bosley Med. Inst.*, 403 F.3d at 679 ("The Second Circuit held in *United We Stand* . . . that the 'use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services.  Thus, the appropriate inquiry is whether [Defendant] offers *competing* services to the public." (emphasis in original)); *see also Wash. State Republican Party*, 676 F.3d at 795 ("At minimum, however, the plaintiff must show that the defendant offers *competing* services to the public." (emphasis in original) (internal quotation marks omitted)); *Stanislaus Custodial Deputy Sheriffs' Assoc.*, 2010 WL 843131, at *6 ("Thus, *United W[e] Stand America*, at best for plaintiff, stands for the proposition that if an actual sale of goods is not involved, the infringer must be engaged in some form of . . . *competition*." (emphasis in original)).

that API includes facts to support its arguments in favor of its energy policies does not transform its political activity into an educational service.[32] And even if the court were to hold that Choose Energy and API both provide educational services, the amended complaint includes no allegations that give rise to any competitive activity. Merely labeling Choose Energy and API's independent "educational" activities "competition"—without more—is not enough.[33]

## IV.

Defendant's motion to dismiss is GRANTED. Because Choose Energy has previously amended its complaint and the court finds that further amendment would be futile,[34] leave to amend is DENIED.[35]

**SO ORDERED.**

Dated: September 9, 2015

PAUL S. GREWAL
United States Magistrate Judge

---

[32] See, e.g., In re Dr. Pepper Co., 836 F.2d 508 (Fed. Cir. 1987) (holding that a contest promoting one's own goods is not an independent service); In re Moore Business Forms, Inc. 24 U.S.P.Q.2d 1638 (T.T.A.B. 1992) (finding that providing consumers with information on the recyclability of one's own paper products is not an independent educational service); In re Billfish Int'l Corp., 229 U.S.P.Q. 152 (T.T.A.B. 1986) (finding that collecting, distributing and soliciting information to be used in one's own periodical is not an independent service).

[33] See Twombly, 550 U.S. at 555 ("[L]abels and conclusions[] and a forumulaic recitation of the elements of a cause of action" will not suffice).

[34] See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

[35] Because more of the discovery requested by Choose Energy (e.g., the identity of API's members, information regarding API's "commercial objectives," etc.) could not transform API's "choose energy" political messaging into a commercial "service," Choose Energy's request for Rule 56(d) discovery is DENIED.