UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHOOSE ENERGY, INC.,<br><br>            Plaintiff,<br><br>    v.<br><br>AMERICAN PETROLEUM INSTITUTE,<br><br>            Defendant. | Case No. 14-cv-04557-PSG<br><br>**ORDER GRANTING MOTION TO ALTER JUDGMENT**<br><br>**(Re: Docket Nos. 85, 96)** |

In the aftermath of this court's September 9, 2015 order dismissing its complaint without leave to amend,[1] Plaintiff Choose Energy, Inc. returns with a motion to alter or amend judgment.[2] The crux of Choose Energy's motion is that newly available evidence shows that Defendant American Petroleum Institute's voter education campaign last fall was a "service" as required for Choose Energy's claim under the Lanham Act for trademark infringement. Because this evidence is in fact new, and renders plausible the notion that the campaign at issue is a Lanham Act-eligible service, Choose Energy's motion is GRANTED.

**I.**

"Rule 59(e) [of the Federal Rules of Civil Procedure] authorizes a motion to alter or amend a judgment after its entry," as well as "a motion to vacate a judgment rather than merely amend it."[3] "Amendment or alteration is appropriate under Rule 59(e) if . . . the district court is presented

---

[1] *See* Docket No. 81.

[2] *See* Docket No. 96.

[3] *Zarcone v. United States*, Case No. 04-cv-01428, 2004 WL 2196560, at *1 (N.D. Cal. Sep. 27, 2004) (citing *Foman v. Davis*, 371 U.S. 178, 181 (1962))

1
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

with newly discovered evidence."[4]

For over ten years, Choose Energy and its online marketplace have allowed individuals and businesses in deregulated states like California to compare offerings from a diverse group of energy suppliers.[5] These suppliers do not compete on price alone.[6] They also compete on source of supply, allowing options including natural gas plans with carbon offsets and electricity from renewables such as wind and solar to tout their green credentials even if they charge more per kWh.[7] Choose Energy uses its domain name and trademarks to emphasize the fact that its services, as opposed to its offerings, are not energy biased.[8]

API bills itself as the leading trade association for the petroleum and natural gas industry in the United States.[9] API was established to afford a means of cooperation between the industry and the government in matters of national concern, foster foreign and domestic trade in American petroleum products and promote the interests of the petroleum industry.[10] API has long engaged in political messaging activities to advocate the collective views of its members and the petroleum industry as a whole.[11]

Late in 2014, API launched a "Choose Energy" campaign aimed at educating voters and encouraging them to engage in conversation about energy issues in that year's election and to elect officials who support energy initiatives.[12] API says that its sole purpose in this campaign,

---

[4] *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001).

[5] *See* Docket No. 67 at ¶ 11.

[6] *See id.* at ¶ 13.

[7] *See id.*

[8] *See id.*

[9] *See* Docket No. 20 at 1.

[10] *See id.*

[11] *See id.*

[12] *See* Docket No. 67 at ¶ 2.

2
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

including its website at chooseenergy.org, was to "encourage voters to make energy a ballot box decision and to educate themselves in assessing candidates' energy policies" leading up to the November 4, 2014 election.[13]

After learning about API's campaign, Choose Energy wrote a letter to API demanding that its use of "Choose Energy" in its campaign stop. After a period of consideration and negotiation, API ultimately declined. API's response was curt, declaring that the First Amendment right to free speech justified its use without condition.

Choose Energy responded by filing suit in this court and immediately seeking a temporary restraining order to shut down chooseenergy.org. The court denied the TRO motion, finding that the Lanham Act did not apply because Choose Energy and API do not compete and that Choose Energy could not show a likelihood of prevailing on the merits.[14] Consistent with API's commitment under penalty of perjury that its campaign would end come election day, API's website no longer contains any content.[15] API then moved to dismiss Choose Energy's federal and state law claims under Fed. R. Civ. P. 12(b)(6) and to strike Choose Energy's state law claims under Cal. Code of Civ. Proc. § 425.16 (the California "anti-SLAPP" statute). This court granted both motions, allowing leave to amend only as to Choose Energy's Lanham Act claims.[16]

After Choose Energy again amended its Lanham Act claims as permitted, API again moved to dismiss. In response, the court held that Choose Energy still had yet to allege with any plausibility that API's election campaign activities were Lanham Act services as required.[17] In so holding, the court considered and rejected Choose Energy's allegations that, in registering its own

---

[13] Docket No. 20 at 3.

[14] *See* Docket No. 24.

[15] *See* http://www.chooseenergy.org.

[16] *See* Docket No. 63. Choose Energy later confirmed it did not seek leave to amend its state law claims. *See* Docket Nos. 64, 66.

[17] *See* Docket No. 81.

3
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

marks such as ENERGY API and ENERGY TOMORROW, API had acknowledged in sworn statements to the PTO that its activities were commercial and not political in nature. "Nothing prohibits an organization from providing services in certain capacities and engaging in pure political speech in another."[18]

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[19]

## III.

Rule 59(e) is an "extraordinary remedy to be used sparingly in the interests of finality and conservation of judicial resources."[20] But one well-recognized justification for such a remedy is the presentation of evidence not "available prior to [the] district court's ruling."[21] There is no dispute that, on the same day this court issued its September order, API filed a statement of use for the trademark VOTE4ENERGY,[22] and that this statement was not before the court. There also is

---

[18] *Id.* at 5. Despite challenging Choose Energy's complaints on their face pursuant to Rule 12(b)(6) for failing to meet the pleading requirements of Rule 8, API did not object to the court's reliance on the evidence submitted by both parties. *See, e.g.*, Docket No. 70 at 2 n.1.

[19] *See* Docket Nos. 7, 13.

[20] *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

[21] *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

[22] *See* Docket No. 96-2. "[15 U.S.C.] 1051(b) allows an applicant who alleges a bona fide intent to use a mark to file an application seeking registration on the Principal Register. If, upon examination, the mark appears registrable, the [USPTO] publishes it for opposition. 15 U.S.C. § 1062(a). If no opposer is successful, the [USPTO] issues a notice of allowance. *Id.* § 1063(b)(2). The applicant then has six months in which to file a statement that verifies that the mark is in use in commerce, the date of first use in commerce, the goods and services in connection with the mark are used in commerce, and the manner in which the mark is being used. *Id.* § 1051(d)(1). The statement of use is then subject to another examination, in which the [USPTO] considers how the mark is used and, if it is still satisfied that, as used, the mark is registrable, issues a certificate of registration. *Id.*" *Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.,* 994 F.2d

no dispute that in that statement API declares under penalty of perjury that the mark is being used in connection with "services" as the Lanham Act requires.  With specific evidence now before the court, Choose Energy can overcome the shortcomings of its operative complaint.

*First*, the VOTE4ENERGY mark is now relevant to the plausibility of Choose Energy's claims in a way that it was not before.  To be clear, in both its oral argument and the voluminous PowerPoint slides it presented during hearings in this case, Choose Energy put VOTE4ENERGY and its associated programs and web sites before the court.[23]  But the court had no reason to consider VOTE4ENERGY in the absence of any suggestion that the mark was in actual use.[24]  In light of API's curiously timed filing before the PTO, now it does.

*Second*, Choose Energy offers more than sufficient allegations that the VOTE4ENERGY and chooseenergy.org campaigns are similar enough to establish that, like the former, the latter is also a Section 1114 and Section 1125(a) service.  API rightly points to differences between the campaigns that might make its VOTE4ENERGY service admission less significant.  For example, the VOTE4ENERGY campaign is not a short-term political effort (as the "choose energy" campaign was for the 2014 election).[25]  But whatever the ultimate merit of these points, at the pleading stage, they are insufficient to overcome the requirement that a plaintiff's allegations be accepted as true.

API also is right that the court previously held that comparisons to other API marks and their campaigns—ENERGY API and ENERGY TOMORROW—were insufficient.[26]  But as API itself argued, "the wording shows that the services offered under 'Energy Tomorrow' are

---

1569, 1570 (Fed. Cir. 1993).

[23] *See, e.g.*, Docket Nos. 73, 79, 91.

[24] *See* 15 U.S.C. § 1114(1)(a); *id.* § 1125(a).

[25] *See* Docket No. 74-1, Ex. C.

[26] *See* Docket No. 81 at 5.

5
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

expressly different from the voter education effort 'Choose Energy.' . . . [A] review of the 'Energy Tomorrow' website (see Dkt. No. 67-4) makes it abundantly clear that website has nothing to do with the election-advocacy speech that was the subject of API's now-dark 'choose energy' website."[27]  The services offered in connection with these other marks include, for example, engine oil certification programs, the publication of technical standards and lobbying services.

In contrast to those campaigns, with respect to VOTE4ENERGY, Choose Energy provides specific allegations of the similarity of the campaigns—e.g., images of happy parents with cute kids, a specific exhortation to vote, etc.—that render it plausible that the campaign at issue also is a service. For instance, the first advertisement below is from API's 2014 "choose energy" campaign. The same day that the court held, at API's urging, that the "choose energy" campaign was pure political speech, API supplied the second advertisement to the USPTO as proof that it was using VOTE4ENERGY in connection with an educational service.

[28]   [29]

---

[27] Docket No. 70 at 3.

[28] Docket No. 96-5 at 3.

6
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

A final point: with VOTE4ENERGY in play based on API's new admission, the court's previous concerns about Choose Energy's allegations of competition are addressed. The court previously held that Choose Energy had not sufficiently alleged that API offered educational services in competition with Choose Energy's.[30] Now that API has admitted that its VOTE4ENERGY campaign service is an educational service in actual use, it is plausible that chooseenergy.org similarly went beyond pure political speech, and thus that the latter competed with the services that Choose Energy has long offered.

Because the court must amend its judgment on Choose Energy's Lanham Act claim, and that judgment was the foundation for dismissing Choose Energy's related state law claims,[31] the court must further amend its judgment to reinstate the state law claims as well. This renders moot API's pending motion for fees.[32]

### IV.

The court does not grant such an "extraordinary remedy" lightly.[33] But the new evidence that Choose Energy has presented—which API itself submitted under penalty of perjury to the USPTO—bears directly on the plausibility of Choose Energy's allegation that the "choose energy" website provided an educational service that competed directly with Choose Energy's own services. On that basis, Choose Energy has met the high bar set by Rule 59(e).

Choose Energy's motion to alter the judgment is GRANTED; the court's judgment is vacated. API's motion for fees is DENIED AS MOOT. The parties shall appear for a status conference on April 5, 2016 at 10:00 AM.

---

[29] Docket No. 96-2 at 14.

[30] *See* Docket No. 81 at 7-8 (citing *Bosley Med. Inst. v. Kremer, Inc.*, 403 F.3d 672, 679 (9th Cir. 2005)).

[31] *See* Docket No. 63 at 7, 10.

[32] *See* Docket No. 85.

[33] *Kona Enters., Inc.*, 229 F.3d at 890.

7
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT

**SO ORDERED.**

Dated: March 17, 2016

_____
PAUL S. GREWAL
United States Magistrate Judge

8
Case No. 14-cv-04557-PSG
ORDER GRANTING MOTION TO ALTER JUDGMENT